United States District Court
Southern District of Texas
ENTERED
January 05, 2016
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| EDDIE JAY THATCHER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-3551 |
| | § | |
| OAKBEND MEDICAL CENTER and HAROLD ALLEN, Individually and in his Official Capacity, | § § § | |
| | § | |
| *Defendants*. | § | |

**ORDER**

Pending before the court are (1) a motion for summary judgment filed by defendants OakBend Medical Center ("OakBend") and Harold Allen (collectively, "Defendants") (Dkt. 15); (2) objections to Defendants' evidence contained within plaintiff Eddie Jay Thatcher's response to Defendants' motion (Dkt. 18-1); (3) a motion to strike a declaration of Joseph Freudenberger filed by Thatcher (Dkt. 23); and (4) a motion to substitute exhibit filed by Thatcher (Dkt. 26). Having considered the motion for summary judgment, objections, and motion to strike, all responsive briefing, and the applicable law, the court is of the opinion that the motion for summary judgment should be GRANTED IN PART AND DENIED IN PART, the objections should be OVERRULED, and the motion to strike should be DENIED AS MOOT. Additionally, the motion to substitute exhibit (Dkt. 26), which is unopposed, should be GRANTED.

**I. BACKGROUND**

This is a wrongful termination and retaliatory discharge case. OakBend is a hospital authority created by the City of Richmond. *See* City of Richmond, Tex. Municipal Code §§ 2-275, 2-276 (creating a hospital authority pursuant to Tex. Health & Safety Code ch. 262 and indicating

that the authority "shall be known as OakBend Medical Center"), https://www.municode.com/library/tx/richmond/codes/code_of_ordinances; *see also* Tex. Health & Safety Code Ann. § 262.003 (West 2015) ("A governing body may adopt an ordinance creating a hospital authority and designating the name of the authority if the governing body finds that creation of the authority is in the best interest of the municipality and its residents."). Allen is the security manager for OakBend and has worked there twenty-seven years. Dkt. 18, Ex. 2 at 12. On or about February 24, 2014, Allen hired Thatcher to work as a security guard. Dkt. 18, Ex. 2 at 29–30, Ex. 3 at 35, 37. Allen, who was Thatcher's direct supervisor, would call Thatcher in to work on nights and weekends as needed, and Thatcher usually worked between thirty and forty hours a week. Dkt. 18, Ex. 1 at 131. As an OakBend security guard, Thatcher was responsible for providing a safe environment, which required him to make rounds, check doors after hours, lock doors, unlock doors, observe psychiatric patients and intervene when necessary, report safety issues, report malfunctioning equipment, and make work orders. Dkt. 18, Ex. 2 at 67–68.

On or about March 12, 2014, the director of the geriatric psychiatric unit called Allen and reported that Thatcher had been inappropriately questioning staff members about alleged abuse of an elderly psychiatric patient. Dkt. 18, Ex. 2 at 147–49. According to Thatcher, the patient was sitting in a wheelchair in the hallway and asked him what she should do if somebody abused her. Dkt 18, Ex. 1 at 107. The patient allegedly told Thatcher that a male black nurse had "grabbed her by the arm, yanked her out of her wheelchair, drug her to her room, and told her, 'This is where you stay.'" *Id.* The patient told Thatcher that the nurse was tall and muscular. *Id.* After receiving this report, Thatcher asked a group of nurses if a tall and muscular black nurse worked on that floor because a patient had accused a muscular black nurse of abusing her. *Id.* at 109–10. Thatcher contends that the nurses "kind of took offense to that." *Id.* at 110. Allen was on vacation at this

time, but Thatcher reported the incident to the house supervisor. *Id.* at 110–11. The patient later reported that Thatcher was inappropriate with her. *Id.* at 111. Allen discussed the incident with Thatcher and told Thatcher that he needed to be careful. *Id.* at 111–12.

On April 5, 2014, Thatcher was assigned to observe a sleeping or unconscious psychiatric patient in the Emergency Room. Dkt. 18, Ex. 1 at 48–75. According to Thatcher, he observed a nurse walk in and kick the unconscious patient in the patient's foot, which was hanging off the end of the bed. *Id.* The patient woke up and exchanged words with the nurse. *Id.* Thatcher contacted Allen within about thirty minutes of the incident and reported the incident. Dkt. 18, Ex. 1 at 76, 80. Allen then reported the incident to the house supervisor. Dkt. 18, Ex. 2 at 99. Thatcher called Allen a few minutes later to advise that the patient wanted to file charges. *Id.* at 101. Thatcher later called Allen a third time to discuss something he had observed on the patient's phone that made him think the police should be informed. *Id.* at 105–06. Allen decided to move Thatcher to a different location because, according to Allen, Thatcher was not deescalating the situation. *Id.* at 107.

That evening after work, Thatcher called the non-emergency number of the Fort Bend County Sheriff's Department. Dkt. 18, Ex. 1 at 41; Dkt. 18, Ex. 6. Thatcher states that he called the sheriff's department because he was concerned about what he had witnessed at the hospital and wanted to know who had authority over OakBend and if what he had witnessed was a felony. Dkt. 18, Ex. 1 at 101–02, 170. According to Thatcher, he told the dispatcher about the incident and that he worked at the hospital, but he did not identify the nurse who kicked the patient. The dispatcher wanted to send a patrol car, but Thatcher declined because he did not want to get in trouble. *Id.* at 121.

On the morning of April 6, 2014, Thatcher went to the home of Rocky,[1] a neighbor of Thatcher's who happens to be a deputy with Fort Bend County Sheriff's Department. Dkt. 18, Ex. 1 at 42–43. Thatcher advised Rocky that he saw a nurse assault a patient. *Id.* at 44–45. Thatcher states that Rocky told him it was best to let the hospital handle the situation. *Id.* at 45.

Thatcher had been scheduled to work on April 6, but Allen pulled him off the shift. Dkt. 18, Ex. 1 at 178. Thatcher then called Allen several times over the next several days to determine if there were shifts Thatcher could work, but Allen indicated nothing was available. Dkt. 18, Ex. 1 at 83–94; Dkt. 18, Ex. 2 at 183–85. Allen also told Thatcher that he (Allen) needed to talk with Human Resources. Dkt. 18, Ex. 1 at 93–94. Allen contends that he was contemplating firing Thatcher during this time period, but he wanted to discuss it with the OakBend's human resources representative first, and she was on vacation. Dkt. 15, Ex. E.

Allen claims that his decision to terminate Thatcher's employment was finalized during the week of April 7, 2014, after he learned of another incident from a different security guard. Dkt. 15, Ex. E; Dkt. 18, Ex. 2 at 179–80. The security guard allegedly told Allen that Thatcher had asked a patient who was signing a Do Not Resuscitate (DNR) form if the patient wanted to die. *Id.* at 180.

The Human Resources representative returned from her vacation on April 11, 2014. Thatcher called her that day, reported that he had witnessed a nurse kicking a patient, told her that he was worried about the incident being covered up, and informed her that he had contacted law enforcement. Dkt. 18, Ex. 1 at 96–97, 103, 176. After receiving this information from Thatcher, the human resources representative called Allen. She questioned Allen about how he handled the

[1] Thatcher does not know Rocky's last name. Dkt. 18, Ex. 1 at 42.

incident and informed Allen that Thatcher had told her that he called the sheriff's department. Dkt. 18, Ex. 3.

On April 14, 2014, Allen terminated Thatcher's employment.[2] Dkt. 18, Ex. 2 at 35. According to Thatcher, Allen was agitated during the meeting because Thatcher had spoken to law enforcement. Dkt. 18, Ex. 1 at 138. Thatcher received a termination form that states:

> Jay [Thatcher] had encountered situations involving psych patient and employees where as his ability to de-escalate the situation is not appropriate in maintaining calm.
>
> First incident was on the Senior Care Unit on 3/12/2014 whereas a verbal encounter with a psych patient had Jay questioning staff about care of the patient. Jay reported to me that a patient kissed on that day.[3]
>
> Second encounter, 4/5/2014, when Jay had a complaint pertaining to hospital staff member and his approach with the patient and staff as to notifying police concerning text of the patient's cell phone. Also, his approach to staff as to the caring of the patient.

Dkt. 16, Ex. B, Ex. 6. There is a handwritten note on the form indicating it was "given by Chief Allen." *Id.* Additionally, Thatcher wrote the following comment in the "employee comments" section: "This is wrong and UNJUST." *Id.*

Thatcher filed a petition in the 268th Judicial District Court of Fort Bend County, Texas, on September 29, 2014. Dkt. 1-3. In the original petition, Thatcher asserted claims of wrongful termination and retaliation in violation of Texas Health and Safety Code section 161.134(f). *Id.* On

---

[2] Thatcher claims that he and Allen were the only ones present when Allen terminated his employment. Dkt. 18, Ex. 1 at 139. Allen claims that the human resources representative was present as well. Dkt. 18, Ex. 2 at 36.

[3] According to Allen, "a patient kissed that day," is supposed to say "a patient kissed *him* that day." Dkt. 18, Ex. 2 at 149. Thatcher denies that he ever told Allen that a patient kissed him. Dkt. 18, Ex. 1 at 108.

December 3, 2014, Thatcher filed an amended petition that included a claim of retaliation for the exercise of free speech and expression under the First Amendment of the United States Constitution. Dkt. 1. Defendants timely removed the case to this court on December 12, 2014, asserting federal question jurisdiction due to the newly added First Amendment claim. *Id.* Thatcher amended his petition again on April 17, 2015. Dkt. 7. His current claims are (1) retaliation under Texas Health and Safety Code section 161.134; and (2) retaliation for exercise of free speech and expression in violation of 42 U.S.C. § 1983. *Id.*

On September 25, 2015, Defendants filed a motion for summary judgment. Dkt. 15. Defendants argue that Thatcher's Texas Health and Safety Code section 161.134 claim against OakBend is barred by sovereign immunity and that Thatcher cannot maintain a claim against Allen as an individual under section 161.134. Additionally, they assert that Thatcher's § 1983 claim is barred because (1) Thatcher did not engage in protected speech regarding a matter of public concern; and (2) OakBend made the decision to terminate Thatcher's employment before knowing that he had contacted law enforcement. Dkt. 15.

Thatcher argues that Defendants' evidence regarding the sovereign immunity defense is inadmissible, and he moves to strike (1) Defendants' Exhibit D (a copy of a municipal ordinance) because it is not authenticated and (2) Defendants' Exhibit E (Allen's affidavit) because it contains hearsay. Dkt. 18-1. As for the § 1983 claim, Thatcher asserts that there are issues of material fact precluding summary judgment on his claim that his employment was terminated in retaliation for his exercise of his First Amendment right to free speech. *Id.* He contends that the content and context of his reporting of patient abuse were matters of public concern and not part of his job duties. He further argues that Allen's claim that he decided to terminate Thatcher's employment before

learning that Thatcher had made reports to outside law enforcement is contradicted by the evidence. *Id.*

Defendants argue that Exhibits D and E are admissible. Dkt. 20. They also offer an additional declaration to alleviate any concerns that Exhibit D is not authenticated. *Id.* & Ex. A. Thatcher moves to strike the declaration because (1) it was filed impermissibly late; (2) the declarant lacks personal knowledge and competence; and (3) the declaration is conclusory. Dkt. 23. The court will first address all of Thatcher's evidentiary objections and will then discuss the issues presented in Defendants' motion for summary judgment.

## II. Evidentiary Objections

### A. Exhibit D and Late Filed Declaration

Exhibit D is a copy of the "Hospital Authority" section of the Richmond Municipal Code that creates OakBend Medical Center. Dkt. 15, Ex. D. Thatcher objects to this exhibit, arguing that it is not admissible evidence because it has not been authenticated and is not self-authenticating under Federal Rule of Evidence 902. Dkt. 18-1 at 23.

Under Rule 902, certain types documents are self-authenticating. *See* Fed. R. Evid. 902. Among the types of documents listed, a "book, pamphlet, or other publication purporting to be issued by a public authority" is considered self-authenticating and "require[s] no extrinsic evidence of authority to be admitted." *Id.* The ordinance at issue can be found by clicking on a link on the City of Richmond's website. *See* https://www.municode.com/library/tx/richmond/codes/code_of_ordinances. It certainly appears to be an official publication of the City of Richmond, and Thatcher has provided the court with no reason to believe the website is unreliable. Thus, the court finds that the evidence is self-authenticating. Moreover, even if the evidence were not self-authenticating, the court takes judicial notice of the ordinance. *See, e.g.*, *In re Waller Creek, Ltd.*,

867 F.2d 228, 238 n.14 (5th Cir. 1989) (discussing the "power of a federal court to take judicial notice of legislative facts" and taking judicial notice of a municipal ordinance); *United States v. City of Miami, Fl.*, 664 F.2d 435, 443 n.16 (5th Cir. 1981) (taking judicial notice of a municipal ordinance that was not introduced into evidence). Thatcher's objection to Exhibit D is OVERRULED. Thatcher's related motion to strike the declaration Defendants filed to authenticate the exhibit is DENIED AS MOOT.

**B. Exhibit E**

Thatcher objects to two statements in Allen's declaration as hearsay and requests that the court strike the statements. Dkt. 18-1 at 23–24. The first statement at issue is in paragraph 5 of Allen's declaration. *Id.* at 23. Allen states that he "received a report from the desk clerk that Thatcher was contributing to problems on the floor by not calming the patient." Dkt. 15, Ex. E ¶ 5. The second statement at issue is in paragraph 7 of the declaration. Dkt. 18-1 at 24. Allen states that he "learned of a third incident involving Thatcher behaving strangely and contrary to [Allen's] expectations" on April 7, 2014. Dkt. 15, Ex. E ¶ 7. Allen asserts that another person told him "that Thatcher had asked a patient, 'Do you want to die' while witnessing the execution of a DNR." *Id.*

Hearsay is a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. of Evid. 801(a)(c). Defendants argue that these statements are not offered to prove the truth of the matter asserted. Dkt. 20. Instead, Defendants assert they merely offer this evidence to show why Allen was motivated to terminate Thatcher's employment when he did so. *Id.* The court agrees with Defendants. The court considers this evidence only insofar as it supports Defendants' assertions about Allen's motivation to terminate Thatcher's employment, and the statements therefore do not fit within the definition of hearsay. Thatcher's objections to these statements are OVERRULED.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

### B. Analysis

Defendants argue that the court should grant summary judgment on Thatcher's Texas statutory claim against OakBend and Allen because (1) the claim against OakBend is barred by sovereign immunity; and (2) the statute does not apply to individuals. Additionally, Defendants seek summary judgment on the § 1983 claim because Thatcher did not engage in protected speech and because the factual basis for his claim is flawed. Dkt. 15. The court will address these arguments *in seriatim*.

#### 1. Count One: Retaliation Under Texas Health & Safety Code § 161.134.

Thatcher claims that OakBend and Allen violated Texas Health and Safety Code section 161.134 when OakBend terminated Thatcher's employment. Dkt. 7. Under section 161.134(a), a "hospital, mental health facility, or treatment facility may not suspend or terminate the employment

of or discipline or otherwise discriminate against an employee for reporting to the employee's supervisor, an administrator of the facility, a state regulatory agency, or a law enforcement agency, a violation of law." Tex. Health & Safety Code Ann. § 161.134(a). Defendants argue that OakBend cannot be held liable under this section because a hospital created by chapter 262 of the Texas Health and Safety Code is immune from suit. Dkt. 16. Chapter 262 gives a "governing body" the ability to "adopt an ordinance creating a hospital authority if the governing body finds that creation of the authority is in the best interest of the municipality and its residents." Tex. Health & Safety Code Ann. § 262.003(a). A hospital authority created under the statute is "a body politic and corporate." *Id.* § 262.003(d). Such a hospital authority, as a governmental entity, is "immune from suit except to the extent the Legislature has waived that immunity." *Classen v. Irving Healthcare Sys.*, 898 S.W.2d 300, 300 (Tex. 1995) (per curiam); *see Harris Cty. Hosp. Dist. v. Tomball Regional Hosp.*, 282 S.W.3d 838 842 (Tex. 2009) ("explaining that "[g]overnmental immunity protects political subdivisions of the State from lawsuits for damages" and that "[h]ospital districts have such immunity"); *Martinez v. Val Verde Hosp. Dist.*, 140 S.W.3d 370, 371 & n.3 (Tex. 2004) (outlining why the county hospital district in that case was immune from suit). The Texas Supreme Court has expressly held that section 161.134 does not waive a hospital district's immunity. *Dallas Metrocare Servs. v. Pratt*, 124 S.W.3d 147, 148–49 (Tex. 2003) (per curiam).

Thatcher does not attempt to convince the court otherwise. Instead, he argues that (1) Defendants' evidence that the hospital was created under chapter 262 is inadmissible; (2) the court cannot render a judgment for Defendants on the basis of a lack of jurisdiction; and (3) the cases Defendants cite are distinguishable. The court has already determined that it can consider the ordinance creating the hospital district, so the first argument fails. As to the argument that the court cannot "render a judgment," Thatcher contends that if OakBend has indeed established a sovereign

immunity defense, "this Court cannot render a judgment for Defendants on a basis of lack of jurisdiction." Dkt. 18-1 at 15. It appears that Thatcher is arguing that Defendants should have filed a motion for judgment on the pleadings—the equivalent of a state court plea to the jurisdiction—rather than a motion for summary judgment, noting that each of the cases upon which Defendants rely was dismissed pursuant to a plea to the jurisdiction. However, the fact that the defense is asserted in a motion for summary judgment does not preclude the court from dismissing the claim for want of jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) ("The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction, as well as by other procedural vehicles, such as a motion for summary judgment."); *see also Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2005) (discussing how the standard under Texas law for a plea to the jurisdiction "generally mirrors that of a summary judgment" and noting that Texas courts "require the state to meet the summary judgment standard of proof" in such cases); *cf. de Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1386 (5th Cir. 1985) (affirming the district court's dismissal of a Foreign Sovereign Immunities Act claim at the summary judgment stage). Moreover, if the court lacks jurisdiction, the court itself must sua sponte dismiss for lack of jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."). Thus, whether dismissal is requested in a motion for summary judgment or plea to the jurisdiction is, in this case, a distinction without purpose, as the case must be dismissed either way.

Thatcher's final argument likewise has no merit. Thatcher correctly argues that most of the cases cited by Defendants can be distinguished from the facts of this case. Dkt. 18-1 at 16–17. However, the distinguishable aspects of the cases are without consequence. The case law clearly establishes that hospital districts such as OakBend enjoy governmental immunity unless it has been

clearly waived and that section 161.134 does not waive the immunity. *See, e.g.*, *Pratt*, 124 S.W.3d at 149; *Ctr. for Health Care Servs. v. Quintanilla*, 121 S.W.3d 733 (Tex. 2003). Thus, OakBend is immune from suit, the government has not clearly waived immunity, and the Texas statutory claim against OakBend must be dismissed.

Defendants also argue that the section 161.134 claim asserted against Allen must fail because the law expressly applies to "hospital[s], mental health facilit[ies], or treatment facilit[ies]," not individuals. Dkt. 15 Defendants support this argument by citing to *Barron v. Cook Children's Health Care System*, 218 S.W.3d 806, 808 (Tex. App.—Fort Worth 2007, no pet.). In *Barron*, the court considered whether the term "treatment facility" as used in the statute encompassed primary care facilities and outpatient care facilities. *Id.* The court noted that the "plain language of the statute limits its application to three types of entities—hospitals, mental health facilities, and treatment facilities." *Id.* Thatcher argues that this case is not on point because it did not address whether a person or supervisor may be held liable under the statute. The court agrees that *Barron* did not directly address this issue, but it also agrees with the *Barron* court that the "plain language of the statute limits its application to three types of entities." *Id.* Those three types of entities do not include persons or supervisors. Thus, Allen cannot be held individually liable under the statute.

Because there is no waiver of immunity for claims made against a hospital district under section 161.134 and because section 161.134 does not apply to suits against individuals, Defendants' motion for summary judgment on the Texas statutory claim is GRANTED and this claim is DISMISSED WITH PREJUDICE.

**2. Count Two: Retaliation for Exercise of Free Speech and Expression.**

Thatcher also asserts a claim against OakBend and Allen under 42 U.S.C. § 1983 for

retaliating against him after he exercised his right to free speech and expression with regard to reporting alleged patient abuse after he observed a nurse kick a patient. Dkt. 7. Under § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Under the First Amendment to the United States Constitution,

> Congress shall make no law respecting the establishment of religion, prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I.

The "First Amendment 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people,'" and it is thus impermissible for the state to "condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of speech" as it relates to public concerns. *Connick v. Myers*, 461 U.S. 138, 142–46, 103 S. Ct. 1684 (1983) (quoting *Roth v. United States*, 354 U.S. 476, 484, 77 S. Ct. 1304 (1957)). However, when "employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Id.* at 146. "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to

review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147.

"To prove a First Amendment retaliation claim, [the plaintiff] must show that (1) she [or he] suffered an 'adverse employment decision'; (2) her [or his] speech involved 'a matter of public concern'; (3) her [or his] 'interest in commenting on matters of public concern . . . outweigh[s] the Defendant's interest in promoting efficiency'; and (4) her [or his] speech motivated the adverse employment decision." *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001). Here, Thatcher clearly suffered an adverse employment decision when his employment was terminated, and Defendants do not attempt to argue that their interest in efficiency outweighs concerns about alleged patient abuse. The issues are whether Thatcher's speech was to a matter of public concern and whether the speech motivated the employment decision.

Defendants first assert that the court should dismiss Thatcher's § 1983 claims because Thatcher did not engage in speech that pertained to a matter of public concern. Dkt. 15 at 13. Thatcher contends, on the other hand, that the content and context of his report of patient abuse were matters of public concern and not part of his job duties. Dkt. 18-1 at 18–19.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. When considering content, form, and context, courts must keep in mind that the First Amendment does not protect speech, even if it "is of great social importance," if "it was made pursuant to the worker's official duties." *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 126 S. Ct. 1951 (2006)). Whether speech on an issue is a matter of public concern is a question of law. *Modica v. Taylor*, 465 F.3d 174, 180 (5th Cir. 2006).

Thatcher first reported the alleged incident of the nurse kicking a patient to his supervisor and human resources. This report was clearly made pursuant to Thatcher's official duties. *See* Dkt. 18, Ex. 2 at 76–77. Thatcher next reported the incident by calling the dispatcher at the Fort Bend County Sheriff's Department. Thatcher stated during his deposition that when he made this call he "was trying to establish whether or not [the kicking incident] was a felony assault." Dkt. 18, Ex. 1 at 100. When asked, "That was the purpose of your call, informative, searching for information?" Thatcher responded in the affirmative. *Id.* When asked if he wanted the dispatcher to send a patrol car, Thatcher said no. During his deposition, Thatcher said that he did not want them to send a patrol car because he was trying to protect himself: "[A]t that point I didn't want to get in trouble for doing the right thing." *Id.* at 102. While certainly Thatcher's own personal interests were involved, his concern for "doing the right thing" lends some credence to his argument that he was calling the dispatcher because of a public concern regarding the alleged patient abuse.

With regard to Thatcher's report to the deputy who lived on his street, Thatcher says again that he "was concerned with the fact that [the kicking incident] may be a felony assault" and "was trying to find out who do I report it to, what agency do I report it to." *Id.* at 47. Defendants assert that the context of both of these instances of speech was information gathering as Thatcher wanted to determine if the incident was a felony assault, whether he should report it, and to whom. Dkt. 15 at 12. Thatcher's neighbor advised him that it was best to let OakBend handle the situation. Dkt. 18, Ex. 1 at 45. Thatcher followed that advice. *Id.*

Defendants assert that if Thatcher were truly speaking as a matter of public concern, he would have accepted the dispatcher's offer to send a squad car and would not have taken his neighbor's advice to let OakBend handle it. Dkt. 15 at 13. Thatcher argues, on the other hand, that the content and context of his call and discussion with his neighbor went beyond information

gathering. Dkt. 18-1 at 20. He contends that the law enforcement personnel that he reported to were in positions to know whether the incident was a felony assault and to do something about it. *Id.* He points out that the mere fact that the dispatcher wanted to send a patrol car demonstrates that the incident was a matter of public concern. *Id.*

Given the current record, the court finds that the determination of Thatcher's motivation for calling the dispatcher and talking with his neighbor are questions best left to the finder of fact. Until the unresolved questions of fact relating to the context of the communications are answered, the court cannot decide as a matter of law whether the speech addressed a matter of public concern. *Cf. Moore v. Shearer-Richardson Memorial Nursing Home*, No. 110CV170-B-S, 2012 WL 1066340, at *5 (N.D. Miss. Mar. 28, 2012).

Defendants next argue that even if one could reasonably determine that Thatcher's speech was a matter of public concern, Allen made the decision to terminate Thatcher's employment before learning of the reports, so the termination could not have been in retaliation for Thatcher's exercise of free speech. Dkt. 15 at 13. Allen provides a declaration in which he states that he did not officially terminate Thatcher's employment until he had a chance to speak with the human resources representative, who informed him that Thatcher had contacted law enforcement. Dkt. 15, Ex. E. However, he claims that he made the decision to terminate Thatcher a week before and finalized the decision when he learned about the DNR incident, also prior to talking to the human resources representative. *Id.*

Thatcher argues that Allen's motivation for terminating his employment is a question of fact for the jury to decide. Dkt. 18-1 at 21. He points out that the termination notice itself notes that Thatcher contacted the police. *Id.* at 22. Additionally, the termination notice does not mention the

DNR incident, which is the incident that Allen contends caused him to finalize his decision to terminate. *Id.*

The court agrees that Allen's motivation for terminating Thatcher's employment is a question of fact. *See Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 193–94 (5th Cir. 1988) (noting that the determination of whether the plaintiff's speech motivated his discharge turned on an issue of material fact to be resolved at trial). While certainly if one were to believe Allen's testimony, then Thatcher was not fired because of the speech. However, there is enough evidence to the contrary that, weighing the evidence in the light most favorable to Thatcher, a reasonable jury could determine that Allen terminated Thatcher's employment because he reported the alleged patient abuse to law enforcement.

Because the record is infused with questions of fact best left for trial with regard to two elements of the alleged § 1983 violation, Defendants' motion for summary judgment on the § 1983 claim is DENIED.

## IV. CONCLUSION

Thatcher's motion to substitute exhibit (Dkt. 26) is GRANTED. Thatcher's evidentiary objections (Dkt. 18-1) are OVERRULED. His motion to strike (Dkt. 23) is DENIED AS MOOT. Defendants' motion for summary judgment (Dkt. 15) is GRANTED IN PART AND DENIED IN PART. It is GRANTED with regard to the claim made against OakBend and Thatcher under Texas Health and Safety Code section 161.134(f), and that claim is DISMISSED WITH PREJUDICE. It is DENIED with respect to Thatcher's § 1983 claim.

Signed at Houston, Texas on January 5, 2016.

Gray H. Miller
United States District Judge