**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **EDDIE JAY THATCHER,** | § | |
| *Plaintiff,* | § | **CIVIL ACTION 4:14-cv-03551** |
| | § | |
| **v.** | § | |
| | § | |
| **OAKBEND MEDICAL CENTER; and** | § | |
| **HAROLD ALLEN, individually and in his** | § | |
| **official capacity,** | § | |
| *Defendants.* | § | |

## DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, Defendant OakBend Medical Center ("OakBend" or "Defendant") presents this Motion for Judgment as a Matter of Law.

### INTRODUCTION AND SUMMARY

On February 10, 2016, a jury returned a verdict in favor of Plaintiff Eddie Jay Thatcher ("Thatcher") for retaliatory discharge in violation of his First Amendment right to free speech. The jury awarded Thatcher $5,000 in back wages, $1,500 for mental anguish, and based on its finding that Defendant acted with malice, the jury awarded $15,000 in punitive damages.

OakBend requests that the Court find that Thatcher did not engage in protected speech and moves for entry of judgment in favor of Defendant. The issue before the Court is simple: ***Does the First Amendment protect speech that concerns a public employee's complaint that a co-worker has engaged in misconduct which does not relate to any official act or omission and, in fact, involves conduct prohibited by the public employer?*** OakBend contends that the First Amendment is not so expansive.  The First Amendment does not protect a public employee

from whistle-blowing that neither bears on the actions of public officials nor questions government policies.

Should the Court deny this threshold request, OakBend asks in the alternative that the Court grant judgment in favor of Defendant on the issue of punitive damages because *there was no evidence at trial that Defendant acted with malice or reckless indifference to Plaintiff's First Amendment rights*.

## ARGUMENT & AUTHORITIES

**A.**   Legal Standard

Under Rule 50 of the Federal Rules of Civil Procedure, judgment as a matter of law is proper when "a reasonable jury would not have a legally sufficient evidentiary basis" to support a finding to the contrary. Fed. R. Civ. P. 50(a). Under that Rule, the Court may disregard any jury finding on a question that has no support in the evidence and "direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

The standard for post-verdict judgment as a matter of law is the same as for summary judgment. *Nadel v. Isaksson*, 321 F.3d 266, 271-72 (2003). In determining whether to grant judgment as a matter of law, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 151 (2000). Judgment as a matter of law is appropriate when "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Cruz v. Local Union No. Three of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154-55 (2d Cir. 1994).

**B.**   Defendant is Entitled to Judgment as a Matter of Law on Thatcher's Retaliatory Discharge Claim under 42 U.S.C. § 1983.

1.      <u>Speech on a matter of public concern is an issue of law for the Court</u>.

Speech of a public employee is entitled to First Amendment protection only if it relates to a matter of public concern. *Boger v. Wayne County*, 950 F.2d 316, 322 (6th Cir. 1991). As such, the threshold question in determining when the discharge of a public employee violates the First Amendment is whether the employee's speech was of a matter of public concern. *Dambrot v. Central Mich. Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995).  It is for the Court to decide whether the speech at issue rises to the level of protection under the First Amendment.  *Id.* ("The question of whether speech touches upon a matter of public concern is one of law...").

2.      <u>Speech is a matter of public concern only if it relates to **official** misconduct</u>.

Speech relating to a matter of public concern can be grouped into one of two categories. The first category involves voicing one's political opinions. *See e.g., Rankin v. McPherson*, 483 U.S. 378, 386 (1987) (comment "addressing the policies of the President's administration" was a matter of public concern).[1]  The second category focuses on the extent to which the content of the employee speech is calculated to disclose ***misconduct on the part of governmental officials in the scope of their official duties***. *See, e.g., Cox v. Dardanelle Public School Dist.*, 790 F.2d 668, 672 (8th Cir. 1986) ("The focus is on the role the employee has in advancing the particular expressions: that of a concerned public citizen, informing the public that the state institution is not properly discharging its duties, or engaged in some way in misfeasance, malfeasance or nonfeasance") (emphasis supplied).

What is of general interest to the public is not necessarily of public concern for First Amendment purposes. *See Wren v. Spurlock*, 798 F.2d 1313, 1317 n.1 (10th Cir. 1986) *cert. denied*, 479 U.S. 1085 (1987) ("We recognize that it is not always enough that the subject matter of a communication be one in which there *might* be general interest, . . . but that what is *actually*

---

[1] Thatcher has never tried to fit his claim in this first category.

3

*said* on the topic is the crux of the public concern content inquiry.") (emphasis original; citations omitted). "In assessing whether the speech touches upon a matter of public concern, it is important not to equate the public's curiosity about a matter with a matter having societal ramifications." *Egger v. Phillips*, 710 F.2d 292, 316-17 (7th Cir.) *cert. denied*, 464 U.S. 918 (1983). Accordingly, the content of speech is of public concern when it incites debate or s***heds light on systemic problems in the functions of government bodies or public officials***. *See Roe v. City & County of San Francisco,* 109 F.3d 578, 585 (9th Cir. 1997) ("the content of the communication must be of broader societal concern")(emphasis supplied).

Employee speech disclosing misconduct involves a matter of public concern ***only*** when the misconduct is either systemic or involves misconduct by public figures or top management (i.e., the misconduct of officials). *See e.g.*, *Cox*, 790 F.2d at 673 (finding that "educational theories and practices employed by ***school administrators*** is clearly a matter of public concern") (emphasis added); *Allen v. Iranon*, 283 F.3d 1070, 1072-1073 (employee was retaliated against in violation of the First Amendment based on speech criticizing prison administration and policies relating to security and inmate abuse); *Davis v. Ector County*, 40 F.3d 777, 782 (5th Cir. 1995) (letter addressing misbehavior of ***public officials*** and disclosing an ***official cover-up*** involved a matter of public concern) (emphasis added); *Catletti v. Rampe*, 334 F.3d 225, 230 (2d Cir. 2003) (testimony on prison administration and systemic problems with the provision of mental health services was of public concern).

      3.    <u>Thatcher did not engage in protected speech on a matter of public concern</u>.

An examination of the content, form, and context of each conversation demonstrates that Thatcher never spoke as a citizen on a matter of public concern. Prior to his termination, Thatcher spoke three times regarding the incident in which an OakBend nurse allegedly kicked a

patient: (i) his internal report to his supervisor, Harold Allen; (ii) his call to the Fort Bend Sherriff's dispatcher; and (iii) his conversation with his neighbor, Deputy Rocky.

Thatcher first spoke about the kicking incident with his direct supervisor, Harold Allen. This speech is unprotected because Thatcher was acting not as a private citizen, but as a public employee pursuant to his duties. *See Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006) ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes").

The same night of the incident, April 5, 2014, Thatcher called the dispatcher for the non-emergency line of the Fort Bend Sheriff's Department to learn if the incident constituted a felony. He did not identify himself or OakBend.  He refused to disclose where the incident occurred and the dispather's request to send a squad car.  Simply put, he failed to identify any public interest since he did not even name a public entity during the call and squashed the potential for public discussion or investigation of his anonymous complaint.

The next day, Thatcher had a five or ten minute conversation with his neighbor, a Fort Bend County Sheriff deputy, in which Thatcher asked whether he should report that a nurse kicked the foot of a patient at the hospital.   His private conversation with his neighbor-constable revealed that he considered the actions of a co-worker, with no official capacity, to have been inappropriate and that he was trying to determine if this nurse's conduct constituted a crime for which he could make a citizen's arrest.[2]  Thatcher did not complain or otherwise try to initiate charges against the nurse.

Moreover, Thatcher never claimed that what he observed implicated misconduct by OakBend.  For that matter, OakBend only learned of his allegations the prior evening, and the

---

[2] At trial, Thatcher explained that whether the incident was a misdemeanor or felony mattered to him because it would empower him to make a citizen's arrest.

conduct about which Thatcher complained expressly violated OakBend policy. He merely witnessed and told a neighbor that he saw a co-worker kick a patient. His complaint did not address systemic abuse of power nor did it concern a public official or state-sanctioned conduct. He simply did not complain about a "broader societal concern" allowing for First Amendment protection. *See Roe*, 109 F.3d at 585.

Thatcher's claim is contingent on the Court finding that he spoke on a matter of public concern. He did not. As a result, the Court should grant Defendant's Motion for Judgment as a Matter of Law.

**C.**     Defendant is Entitled to Judgment as a Matter of Law on the Jury's Award of Punitive Damages

1.     An award of punitive damages requires proof of malice or reckless indifference.

The purpose of punitive damages is to punish egregious conduct and deter similar conduct in the future. *See Smith v. Wade*, 461 U.S. 30, 54 (1983). Punitive damages may be assessed in an action under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent [i.e. malice], or when it involves reckless or callous indifference to the federally protected rights of others." *Id.* at 56; *see also Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535-36 (1999) (discussing *Wade* as instructive in defining malice or reckless indifference for purposes of imposing punitive damages under 42 U.S.C. § 1981).

"Malice" or "reckless indifference" pertains to the employer's knowledge that it may be violating federal law, not its knowledge that it is engaging in discrimination or retaliation. *See Kolstad,* 527 U.S. at 535-36. In other words, an employer can intentionally retaliate or discriminate without necessarily being subject to a jury assessment of punitive damages. *Id.* at 536 ("There will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard"). An employer is not malicious or recklessly indifferent if

6

it acts intentionally, but with a reasonable belief that its actions are lawful. *Passatino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 515 (9th Cir. 2000).

One means of meeting the standard for punitive damages is showing that the defendant's actions were particularly egregious or outrageous. *Kolstad*, 527 U.S. at 538-39. Other examples of conduct that might support an award of punitive damages include "(1) a pattern of discrimination, (2) spite or malevolence, or (3) a blatant disregard for civil obligations." *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1322-23 (11th Cir. 1999).

An award of punitive damages must be supported by evidence above and beyond that which merely establishes liability. *See Emmel v. Coca-Cola Bottling Co.,* 95 F.3d 627, 636 (7th Cir. 1996) (noting that proving punitive damages in the analogous context of employment discrimination requires a plaintiff to jump "a higher hurdle than merely proving the underlying unlawful discrimination."). "To require otherwise, of course, would permit every employment discrimination claim to include a punitive damage award because every employment discrimination plaintiff must demonstrate an intentional unlawful discrimination." *Tincher v. Wal-Mart Stores*, 118 F.3d 1125, 1132 (7th Cir. 1997). As such, punitive damages are inappropriate where the question of liability is itself a difficult one. *See id.* at 1133 (emphasizing that the "issue of liability in this case was extremely close" in finding that punitive damages were unavailable).

Finally, an employee who proves malice or reckless indifference by the individual who discriminated or retaliated against him must also impute said conduct to the defendant-organization. *See Kolstad*, 527 U.S. at 539 ("The inquiry does not end with a showing of the requisite 'malice or . . . reckless indifference' on the part of certain individuals, however... The plaintiff must impute liability for punitivedamages to respondent."). Imputation of punitive

damages liability is limited by the law of agency. *Id.* at 541. As a result, an employer will be liable for punitive damages resulting from the actions of his employee only if "(a) the [employer] authorized the doing and the manner of the act, or (b) the [employee] was unfit and the [employer] was reckless in employing him, or (c) the [employee] was employed in a managerial capacity and was acting in the scope of employment, or (d) the [employer] or a managerial agent of the [employer] ratified or approved the act." *Id.* at 542-43. To have managerial capacity, an employee must hold a position of importance, but not necessarily a position of officer or director. *Id.* at 543. Additionally, an employer will not be liable for punitive damages in discrimination cases, and presumably retaliation cases, if the employer made a good faith effort to comply with the law violated. *See id.* at 544-46 (applying this rule in the context of Title VII).

      2.    <u>There is legally insufficient evidence to support an award of punitive damages.</u>

Thatcher presented a case based on bad timing and poor documentation, not malice or evil motive.   At best, he offered evidence that he was the victim of retaliation under circumstances where he knew his future employment was in question before he spoke with law enforcement.  In short, the evidence demonstrated:

- In March 2014, Allen counseled Thatcher about an incident Thatcher had on the geriatric psychiatric floor.  Allen did not document the encounter until after Plaintiff's termination. Thatcher had only been on the job a few weeks;

- On April 5, 2014, Thatcher witnessed what he perceived as patient abuse (i.e., "the kicking incident");

- Thatcher reported the incident to Allen that same day.  Allen heard from another employee (Thea Cook) that Thatcher was causing problems that night. Allen did not document the encounter at the time;

- Allen never again scheduled Thatcher for work;

- Thatcher contacted law enforcement regarding the alleged abuse on the evening of April 5 (the anonymous dispatcher call) and spoke to his neighbor-constable the morning of April 6;

- Sometime during the week of April 6, Allen learned of an incident involving Thatcher asking a patient, "Do you want to die."  Allen did not document the incident at the time or confront Thatcher with the allegation.

- On April 11, 2014, Thatcher told Nancy Retzlaff, HR Director, that he had "contacted law enforcement" in the course of his complaint that Allen was not scheduling him for work.

- On April 14, 2014, Allen terminated Thatcher.  Allen knew Thatcher had contacted law enforcement prior to his termination.

- Retzlaff approved of Thatcher's termination.  She had judged him unfit for the position during his interview and advised Allen that she did not think Thatcher would be able to perform the job.

None of these facts support a pattern of misconduct nor evidence spite or conscious disregard for Thatcher's First Amendment rights. *See Dudley*, 166 F.3d at 1322-23 (listing examples of conduct warranting punitive damages).  The facts of this case were not so one-sided to allow the finding of liability to conclude malice or reckless disregard. *See Tincher*, 118 F.3d at 1133 (implying that close cases are generally inappropriate for punitive relief).

There was also substantial evidence in favor of OakBend; namely, evidence of three separate complaints about Thatcher during his very short tenure. Thatcher was counseled about at least one of the incidents.  Additionally, Allen refused to assign Thatcher for shifts the entire last week of his employment, during which Allen was unaware of Thatcher's contact with law enforcement.  Allen was no doubt debating what to do about Thatcher's continued employment before Thatcher advised Retzlaff that he had contacted law enforcement.  Indeed, Thatcher called Retzlaff to complain that he was not being allowed to return and it was only in that conversation that he revealed he had "contacted law enforcement."

Finally, Thatcher failed to offer any evidence to impute liability for punitive damages to OakBend. *See Kolstad*, 527 U.S. at 539 (requiring that a plaintiff must impute the malice or reckless indifference of decision-making individuals to their employer in order to award punitive

damages against the employer).  He did not present facts to show that his termination was part of some larger scheme by OakBend to silence free speech.  For that matter, his comments to law enforcement were never directed against OakBend since his remarks to his neighbor-constable related solely to a co-worker's conduct that violated OakBend policy.

Thatcher failed to prove that OakBend acted with malice or reckless indifference when Allen terminated Thatcher's employment. As such, the Court should grant Defendant's Motion for Judgment as a Matter of Law on the issue of punitive damages.

**PRAYER**

WHEREFORE, Defendant OakBend Medical Center respectfully request that this Court grant this Motion for Judgment as a Matter of Law.

Respectfully submitted**,**

WEYCER KAPLAN PULASKI & ZUBER, PC

___*/s/ Mark J. Levine* _____
Mark J. Levine
State Bar No. 00791102
Fed. No. 20021
11 Greenway Plaza, Suite 1400
Houston, Texas  77046
Tel. (713) 961-9045
Fax (713) 961-5341
mlevine@wkpz.com

**ATTORNEY-IN-CHARGE FOR DEFENDANT
OAKBEND MEDICAL CENTER**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 18, 2016, a true and correct copy of the foregoing instrument was filed in the CM/ECF system and forwarded to all counsel of record in compliance with the Federal Rules of Civil Procedure

Scot Clinton
The Clinton Law Firm
2700 Post Oak Blvd., Ste. 1120
Houston, Texas 77056
Telephone: (713) 360-8900
Facsimile: (713) 589-8800
scot@theclintonlawfirm.com

_/s/ Mark J. Levine_
Mark J. Levine