United States District Court
Southern District of Texas
**ENTERED**
October 06, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDDIE JAY THATCHER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-3551 |
| | § | |
| OAKBEND MEDICAL CENTER, | § | |
| | § | |
| *Defendant*. | § | |

# ORDER

Pending before the court are (1) a motion for attorneys' fees and costs (Dkt. 54); and (2) a supplemental motion for fees and costs (Dkt. 67), both filed by plaintiff Eddie Jay Thatcher. Having considered the motions, related filings, and applicable law, the court is of the opinion that the original motion for fees and costs (Dkt. 54) should be GRANTED IN PART AND DENIED IN PART and the supplemental motion (Dkt. 67) should be GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

Thatcher filed his original petition against OakBend Medical Center ("OakBend") and Harold Allen in the 268th Judicial District Court of Fort Bend County, Texas, on September 29, 2014. Dkt. 1-3. The petition asserted claims for retaliation in violation of the Texas Health and Safety Code § 161.134 and sought exemplary damages. *Id.* He amended his petition on December 3, 2014, to include a claim of retaliation for the exercise of free speech and expression under the First Amendment of the United States Constitution. Dkt. 1. OakBend removed the case to this court on December 12, 2014, asserting that the court has federal question jurisdiction. *Id.* On April 17, 2015, Thatcher filed amended his pleading again, this time styling the pleading "Plaintiff's Original

Complaint." Dkt. 7. This pleading continues to assert a claim for retaliation in violation of the Texas Health and Safety Code and retaliation for exercising free speech and expression in violation of 42 U.S.C. § 1983. *Id.* OakBend and Allen filed a motion for summary judgment, and Thatcher filed a 25-page response to that motion along with seven exhibits. Dkts. 15, 18. The court granted the motion with regard to the Texas statutory claim, but denied it with regard to the § 1983 claim. Dkt. 27. The summary judgment stage included briefing on objections to exhibits. *See* Dkt. 18. There were also various evidentiary objections during the pretrial stage, and disagreements regarding the jury charge that required additional briefing. *See, e.g.*, Dkts. 32, 35, 42. The case went to trial, and the trial lasted three days. Dkts. 41, 43, 45. The jury returned a verdict in favor of Thatcher. Dkt. 50. OakBend filed a motion for judgment as a matter of law, which required additional briefing on the part of all parties. Dkts. 53, 65. The court granted that motion with regard to the jury's award of punitive damages, but it otherwise denied the motion. Dkt. 66. Thatcher now moves for an award of attorneys' fees and costs in two separate motions separated by date the fees and costs were incurred. Dkts. 54, 67. The motions are ripe for disposition.

## II. LEGAL STANDARD

Under 42 U.S.C. § 1988(b), a court, "in its discretion, may allow the prevailing party, other than the United States, reasonable attorney's fees as part of the costs" in cases brought under § 1983. Section 1988 "contemplates reasonable compensation, in light of all the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and on less." *Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S. Ct. 939 (1989). The purpose of § 1988 is "to make sure that competent counsel [is] available to civil rights plaintiffs." *Id.* While the statute states that courts have discretion to award fees, the "discretion is not without limit" and "the prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award

2

unjust.'" *Id.* at 89 n.1 (quoting *Newman v. Piggie Park Enters., Inc.*, 309 U.S. 400, 402, 88 S. Ct. 964 (1968)). "The special-circumstances exception is a narrow carve-out of the general rule that prevailing civil-rights plaintiffs should be awarded fees," and the Fifth Circuit has held that if there are no special circumstances, a court should award fees under section 1988 "'*as a matter of course*.'" *Sanchez v. City of Austin*, 774 F.3d 873, 880 (5th Cir. 2014) (quoting *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985)). Special circumstances justifying a denial of fees "arise only in unusual situations." *Riddell v. Nat'l Democratic Party*, 624 F.2d 539, 544 (5th Cir. 1980).

Plaintiffs are "prevailing parties" under § 1988 for attorneys' fees purposes "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933 (1983). "[P]laintiffs may receive fees under § 1988 even if they are not victorious on every claim. A civil plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purpose." *Fox v. Vice*, 563 U.S. 826, 834, 131 S. Ct. 2205 (2011) (citing *Hensley*, 461 U.S. at 435). The fee award, however, "should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief." *Id.*

Once a court has determined that a plaintiff is entitled to attorneys' fees, then it must determine the amount. *Hopwood v. Texas*, 236 F.3d 256, 277 (5th Cir.2000). Courts use a two-step process to calculate reasonable attorneys' fees. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir.1998). First, the court calculates a "lodestar" fee by multiplying the reasonable number of hours spent on the case by the reasonable hourly rates for the participating lawyers. *Id.* Second, the court considers whether the lodestar should be adjusted upward or downward depending on the circumstances of the case, under the twelve Johnson factors. *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974)). The factors are: (1) the time and labor required

for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See id.* "The fee applicant bears the burden of proving that the number of hours and the hourly rate for which compensation is requested [are] reasonable." *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996) (citing *Hensley*, 461 U.S. at 437).

### III. ANALYSIS

Thatcher requests $190,250.00 in attorneys' fees incurred from the beginning of the case until the jury's verdict, $15,634.25 in fees incurred since the jury's verdict, conditional appellate fees, and costs. Dkt. 54-1 (original motion for fees and costs); Dkt. 67-1 (supplemental motion for fees and costs). He asserts that his attorneys, lead counsel Scot Clinton of the Clinton Law Firm and Craft Hughes and Jarrett Ellzey of Hughes Ellzey, LLP, worked 675.58 hours prosecuting this case and that he is also entitled to 132.87 hours in clerical/legal assistant time. He states that the issues in this case have been "vigorously litigated" that OakBend's defenses were "complex," and that "this case required hundreds of hours of work to properly perform all the legal services necessary to prevail on [Thatcher's] claim." *Id.*

OakBend responds that the "Court should award Thatcher his reasonable attorney's fees consistent with the limited success he achieved at trial on this straight-forward employment case," but urges that the court should not award fees for time spent prosecuting the Texas statutory claim that the court dismissed at summary judgment or for unnecessary work, duplicative counsel, and

4

administrative tasks. Dkt. 58. OakBend asserts that the Texas state-law claim was a lost cause from the beginning because the statute does not apply to public entities, summary judgment was granted in OakBend's favor on that claim, and consequently Thatcher should receive no fees for pursuing that claim. *Id.* OakBend additionally argues that discovery was limited because Thatcher only worked for OakBend for fifty days. *Id.* While OakBend produced 700 pages in discovery, most of the pages were a policy manual that was never shown to the jury. *Id.* Only three depositions were taken. *Id.* OakBend also asserts that the trial took less than three days and did not require multiple trial counsel. *Id.* OakBend did not respond to Thatcher's request for conditional appellate attorneys' fees or Thatcher's supplemental motion for attorneys' fees.

The court will first address Thatcher's request for fees related to services performed through the date of the jury's verdict. Then, it will address costs, which were requested within the motion for attorneys' fees rather than submitted as a bill of costs. The court will address Thatcher's request for conditional appellate fees and his supplemental motion for fees, which covers fees incurred after the date of the verdict, last.

**A.      Fees Through February 10, 2016**

     **1.      Multiple Lawyers**

First, OakBend argues that Thatcher did not need three lawyers on this case and that the reasonable hours used in the lodestar should be limited to time Clinton reasonably spent working on the case. The district court must determine whether the hours claimed are reasonably expended, and "[i]f more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 768 (5th Cir. 1996) (citing *Johnson*, 488 F.2d at 717). Thatcher argues

that the Hughes Ellzey firm originated the case and therefore was kept in the loop throughout. Dkt. 54-1. He asserts that Hughes Ellzey's work was necessary because the case involved an obscure intersection of employment and First Amendment law. *Id.* The court disagrees. While the case was not a typical case, it did not involve an obscure area of the law and was not particularly difficult. One attorney "would do." The court thus finds that the hours expended by the Hughes Ellzey firm should not be included in the number of reasonable hours needed and thus not used to calculate the lodestar.

### 2. Billing Judgment

OakBend next argues that Clinton did not exercise billing judgment by reducing the bills for time spent on failed claims, unnecessary claims and communications, attorney education, and many other unreasonable expenses. Dkt. 58. "[P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment." *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.* If a plaintiff fails to offer evidence of billing judgment, a court may reduce the award by a percentage that is an appropriate substitute for billing judgment. *Id.*

#### a) Work on Failed Claim

OakBend asserts that half of the $11,677.00 in fees for work related to responding to OakBend's motion for summary judgment should be deducted because these fees relate to hours spend pursing the Texas statutory claim, which was unsuccessful. Thatcher asserts that the Texas statutory claim and the federal claims are inextricably intertwined because they were based on the same set of facts. Dkt. 59. The court agrees that there was some overlap with regard to the two

6

claims, but disagrees that they were inextricably intertwined. Approximately one-fourth of the pages[1] of Thatcher's summary judgment argument dealt with whether the hospital was immune against the state law claim and whether Thatcher could assert the state law claim against an individual, as he initially asserted claims against his supervisor as well as OakBend. Since these arguments are completely separate from the arguments made on the successful claim, and the state law claim was not successful, Thatcher is not entitled to bill for one-fourth of the hours he spent working on the response to the motion for summary judgment. OakBend provides invoice excerpts of time spent relating to the motion for summary judgment, and Clinton does not dispute that this invoiced time relates to the motion for summary judgment. *See* Dkt. 58, Ex. A-1; Dkt. 59. These excerpts indicate that Clinton spent 34.92 hours on work relating to the motion for summary judgment and Hardy spent 6.56 hours on work relating to the motion for summary judgment. The court will reduce Clinton's hours by 8.73 (34.92 X 0.25) and it will reduce Hardy's hours by 1.64 (6.56 X 0.25) to account for the work spent on the unsuccessful claim.

      **b)**      **Unnecessary Work**

OakBend next contends that all the time Thatcher spent analyzing post-termination whistle-blower speech should be discounted as there is no way that post-termination speech contributed to his termination. OakBend additionally asserts that Thatcher's counsels' billing entries relating to a motion to compel that he never filed should be discounted.

Thatcher argues that his counsel needed to review the reports Thatcher made after he was terminated to establish the good faith nature of Thatcher's speech and the rebut the potential claim by OakBend that Thatcher was not really concerned about the assault. Dkt. 59. Thatcher does not

---

[1] Approximately 3.5 out of 12 pages of argument were related to these arguments, which are entirely separate from the arguments relating to the First Amendment. *See* Dkt. 18-1.

7

address OakBend's arguments regarding the time spent preparing a motion to compel that was never filed. *See* Dkt. 59.

The court does not believe that the time Thatcher's counsel spent obtaining evidence regarding Thatcher's post-termination conduct was necessarily unreasonable and therefore will allow the hours spent working on this aspect of Thatcher's legal theory. However, since Thatcher did not respond to the argument regarding the non-filed motion to compel, Thatcher has not met his burden with regard to the time spent researching for and preparing the motion. Thus, the court will deduct 11.34 hours from Clinton's hours when calculating the lodestar.[2]

### c) Attorney Education Time

OakBend additionally contends that Thatcher did not exercise billing judgment in billing for $5,395.00 for basic research and attorney education. Dkt. 58 (citing Dkt. 58, Ex. A-3). Thatcher contends that the time OakBend challenges was spent researching specific items associated with this case and developing trial strategy and was thus reasonable and necessary. Dkt. 59.

The court has reviewed the contested "attorney education" time entries, and the descriptions are related to reviewing books such as "The Nuts and Bolts of Taking and Defending Depositions" and the voir dire and direct examination sections of "Winning at Trial." *See* Dkt. 58, Ex. A-3. While the court certainly believes it is reasonable and necessary for attorneys to know the "nuts and bolts" of taking or defending depositions and to learn all they can about "winning at trial," these are general legal skills, and it is not reasonable to bill clients for learning them. Only three of the contested time entries relate specifically to this case: 2.86 hours spent traveling to this court to observe the judge presiding at a hearing and "check out court room"; 1.73 hours spent reviewing a

---

[2] The court calculated 11.34 hours by adding the following times together, all of which were described as either drafting or researching for a motion to compel: 3.75, 0.57, 6.00, 0.32, 0.68, 0.02.

legal journal article about Section 1983 litigation; and 1.17 hours spent reviewing a law review article about municipal liability. *See id.* The court finds that it is necessary and reasonable to spend time "checking out" the courtroom before trial, but one hour is sufficient. The court additionally finds that spending time reviewing legal journal articles that specifically address legal issues that were central to this case is reasonable, but the amount of time charged is excessive. One hour per article should have been sufficient. Accordingly, the court will allow three hours out of the 16.6 contested attorney-education hours, leaving a reduction of 13.6 hours.

### d) Vague Time Entries

OakBend next argues that $3,742.75 of Thatcher's counsel's time entries should be excluded as too vague. Dkt. 58. Thatcher concedes "that certain entries are terse regarding the subject matter" but urges the court to view the records as a whole. Dkt. 59.

The court has reviewed the billing records. While some of the entries that OakBend contends are too vague can be deemed reasonable, 3.02 hours are simply described as "background information," 0.51 hours as "people confer with," and 1.73 hours as "other Michele Hardy." The court finds that, even viewing these entries in the context of the entire record, these billing entries are not descriptive enough to determine that the time expended was reasonable and necessary. Accordingly, the court will deduct 5.26 (3.02 + 0.51 + 1.73) hours from the reasonable hours used in the lodestar calculation.

### e) Excessive Communications

OakBend argues that the court should not count the time Thatcher's counsel spent on intra-office communications or excessive interoffice communications. Dkt. 58. OakBend cites twenty-four different time entries relating to conferring or corresponding that total $3,326.50 in fees as excessive. *See* Dkt. 58, Ex. A-5. Thatcher responds that nine of the contested entries involve

9

Clinton's communications with his legal assistant, fifteen involve Clinton's communications with co-counsel, and all the entries involve time spent advancing the case. Dkt. 59. The court has reviewed the time entries and finds that most of the entries are less than one hour and spaced out enough that they seem to be reasonable in light of the complexity of issues being considered. However, there is one entry that tersely states, "People confer with / Michele Hardy," for 4.10 hours. The court finds that Thatcher has not met his burden of showing that his legal assistant needed to spend this much time conferring with unknown individuals in one single day. Accordingly, the court will reduce the reasonable legal assistant hours used in the lodestar calculation by 4.10 hours.

### f) Administrative/Non-Legal Time

OakBend next objects to $1,965.75 in administrative fees because they involve administrative, non-legal work. Dkt. 58. Thatcher argues that Clinton is a solo practitioner with only one legal assistant who has to perform administrative work but that Clinton lowered his rate for this work. Dkt. 59.

Under Fifth Circuit law, a "finding that some of the hours claimed were for clerical work may justify compensating those hours at a lower rate, and, in some circumstances, might justify a reduction in the number of compensable hours; it does not, however, justify complete denial of the fee request." *Cruz v. Hauck*, 762 F.2d 1230, 1235 (5th Cir. 1983).

Here, Clinton's affidavit and billing records indicate that he billed for all non-legal or clerical work he performed at a staff rate, not his lawyer rate of $325 per hour. *See* Dkt. 54, Ex. 1 ¶¶ 12, 25 (Clinton's affidavit); Dkt. 54, Ex. 1, Ex.2 (Clinton's invoice). Clinton's legal assistant's rate is $50 per hour. *See* Dkt. 54, Ex. 1 ¶ 12. In reviewing the "hours expended" and "lodestar calculation" portions of Clinton's affidavit, as well as the invoice, it appears that Clinton did not bill at his

10

attorney rate for the 6.75 hours of clerical time for which he seeks fees.³ *See* Dkt. 54, Ex. 1 ¶¶ 12, 14; Dkt. 54, Ex. 1, Ex. 2. Thus, since Clinton billed his time at the legal assistant rate, the court will include this time as reasonable time expended in the lodestar calculation and multiply it times the reasonable legal assistant rate.

        g)      **HIPAA**

OakBend next objects to $378.00 that Clinton billed for time spent attempting to locate the patient who the nurse at OakBend kicked. Dkt. 58; *see* Dkt. 58, Ex. A-7 (invoice entries relating to tracking down "C.V."). OakBend contends that Thatcher's knowledge and disclosure of the patient's identity for this lawsuit violated Thatcher's Health Insurance Portability and Accountability Act ("HIPAA") obligations as an employee of OakBend.⁴ Dkt. 58; *see* HIPAA, 42 U.S.C. §§ 1320d-1 to d-7. OakBend does not cite which section of HIPAA Thatcher violated or any OakBend policies. *See* Dkt. 58. Thatcher responds that the witness had material information, it was appropriate to try to find him, and Thatcher "did not violate any HIPPA [sic.] obligation he may have had." Dkt. 59. Neither party actually cites any law with regard to whether giving the name of a patient to a lawyer as a potential witness is a HIPAA violation.

The court finds that it was reasonable to attempt to find a material witness in the case. While it is possible that Thatcher's disclosure of the witness's name to his attorney violated HIPAA or

---

³ There is a slight discrepancy in the numbers, but it is insignificant. Clinton billed $325 per hour for his attorney time, and he states that he spent 401.58 hours of attorney time on the case. He billed $50 per hour for his non-legal work and for his legal assistant's work, and he states that he worked 6.75 hours on non-legal work and she worked 132.12 hours. When one multiplies and adds this up, the total is $137,457.00: (($325.00 X 401.58) + ($50.00 X (6.75 + 132.12)) = $137,457.00. Clinton's total is $137,466.50. *See* Dkt. 54, Ex. 1 ¶ 14.

⁴ HIPAA "generally provides for confidentiality of medical records," and it "focuses on regulating persons that have access to individually identifiable medical information." *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006). It does not support a private right of action and instead must be enforced by the Secretary of Health and Human Services. *Id.*

OakBend policies, OakBend has not met its burden of showing that this otherwise reasonable use of attorney time should be excluded.

### h)  Legal Work by Non-Lawyers

OakBend next argues that Thatcher should not recover for legal work performed by Clinton's legal assistant, citing to an invoice entry described as "Legal research / Michele Hardy: Emailed OakBend's counsel for additional missing pages of discovery. Review Dawn Simons Dep., Research case law First Amendment Rights." Dkt. 58, Ex. A-8. Hardy spent 8.83 hours performing the described work, and Clinton invoiced $441.50 for her work. *Id.* Thatcher responds that while the entry is entitled "legal research," the description includes multiple activities and, to the extent it refers to case law, it simply means the legal assistant was collecting and organizing information for counsel's review. Dkt. 59. Thatcher contends that Clinton had asked the legal assistant to obtain a copy of an important case and identify other opinions that cited that case in the Fifth Circuit for Clinton's review. The court finds that pulling and organizing cases is appropriate work for a legal assistant. This time will be included as reasonable hours in the lodestar calculation.

### I)  Travel Time

OakBend asserts that Thatcher should have excluded the time he spent to travel to mediation. Dkt. 58 & Ex. A-9. Thatcher billed $107.25 for travel to the mediation. Dkt. 58, Ex. A-9. OakBend conclusorily asserts that travel time should not be awarded in attorney's fees. Dkt. 58. Thatcher, citing *Vanderbilt Mortgage & Finance, Inc. v. Flores*, No. C-09-312, 2011 WL 2160928 (S.D. Tex. May 27, 2011), asserts that necessary travel time is compensable but that the entry should have reflected a fifty percent reduction of the hourly rate. Dkt. 59. In *Vanderbilt Mortgage & Finance*, the court noted that generally, in the Fifth Circuit, courts award only fifty percent of an attorney's reasonable rate for travel time. 2011 WL 2160928, at *6 (collecting cases, including *Watkins v.*

*Fordice*, 7 F.3d 453, 459 (5th Cir. 1993) (allowing an award of travel time at one-half the hourly rate)). The court agrees that the rate should be reduced by one-half for travel time. Accordingly, the court will include the 0.33 hours for travel invoiced in the reasonable hours calculation, but it will multiply the 0.33 hours by one-half of the reasonable rate for Clinton to determine the lodestar.

### 3. The Lodestar Calculation

Before calculating the lodestar, the court notes that OakBend has not asserted that the $325 per hour that Clinton requests for his legal work and the $50 per hour requested for non-legal work is unreasonable. Moreover, the court finds these rates to be reasonable. The court will therefore calculate the lodestar by multiplying the reasonable rates by the reasonable hours expended as discussed above:

#### Attorney Travel Time

Clinton reasonably spent 0.33 hours and the reasonable rate of this travel is one half of his reasonable attorney rate of $325, or $162.50, per hour.

$$0.33 \text{ hours} \times \$162.50 = \$53.63$$

#### Legal Assistant Time - Clinton

The $50.00 per hour that Clinton invoiced for his non-legal work is a reasonable rate. Clinton reasonably spent 6.75 hours on non-legal work.

$$6.75 \text{ hours} \times \$50.00 = \$337.50$$

#### Legal Assistant Time - Hardy

The invoiced $50.00 per hour for non-legal work performed by Clinton's legal assistant, Hardy, is a reasonable rate. After subtracting 1.64 hours spent on the unsuccessful claim and 4.10 hours for excessive communications from the 132.12 hours invoiced, Hardy reasonably spent 126.38 hours (132.12 - 1.64 - 4.10 = 126.38) on non-legal work.

**126.38 hours X $50.00 = $6,319.00**

### Legal Work

The invoiced $325.00 per hour for Clinton's legal work is a reasonable rate. After subtracting 0.33 hours travel time, 8.73 hours spent on the unsuccessful claim, 11.34 hours spent on the unnecessary motion to compel, 13.6 hours spent on general attorney education, and 5.26 hours on vague time entries from the 401.58 hours invoiced, Clinton reasonably spent 362.32 hours (401.58 - 0.33 - 8.73 - 11.34 - 13.6-5.26 = 362.32) on legal work for this case.

**362.32 hours X $325.00 = $117,754.00**

### Total Lodestar

Adding these lodestar figures together, the total lodestar amount is:

**$53.63 + $337.50 + $6,319.00 + $117,754.00 = $124,464.13**

### 4.  Reduction for Limited Amount of Success

OakBend requests the lodestar amount be reduced based on the limited success in this case. Dkt. 58. Thatcher asserts that "'[s]uccess is not measured merely based on the recovery of monetary damages, as "a civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards."'" Dkt. 59 (quoting *Norsworthy v. Nguyen Consulting & Servs., Inc.*, 575 F. App'x 247 (5th Cir. 2014) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S. Ct. 2686 (1986))). Thatcher contends that "the ultimate benefit of Thatcher's speech and this litigation is to a large class of people, namely future patients at OakBend Medical Center." *Id.* The court agrees that the lawsuit has a greater impact than the monetary damages alone, as certainly OakBend will consider any First Amendment implications of terminating employees who engage in speech relating to patient welfare. Thus, despite the limited monetary success, the court does not believe a reduction in the lodestar is necessary.

**B.     Costs Through Trial**

Thatcher requests $5,690.38 in costs, and OakBend seeks to reduce the costs to $1,205.72. Dkts. 54, 58. OakBend objects to $432.39 for office supplies, $185.80 for excessive production costs, $290.03 for books and videos to education Clinton on deposition techniques, $143.00 in parking, $29.50 in courier delivery fees, and $125.00 for a LexisNexis Verdict and Settlement Analyzer. Dkt. 58. Thatcher responds that "to the extent any of the costs and expenses being sought by [Thatcher] are determined by the Court to not be chargeable as taxable costs, [Thatcher] seeks to have such costs considered as non-taxable and paid pursuant to [Thatcher's] motion." Dkt. 59. Thatcher does not provide any authority, however, for the court to award non-taxable costs. The court, thus, will consider whether the objected-to costs are taxable under the statute.

Under Federal Rule of Civil Procedure 54(d), "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d). Absent objections, the clerk may tax the costs fourteen days after the prevailing party notifies the clerk of its costs. *Id.* Under 28 U.S.C. § 1920, the judge or clerk may tax the following as costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under [28 U.S.C. § 1923];
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [29 U.S.C. § 1828].

15

28 U.S.C. § 1920. "The Supreme Court has indicated that federal courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary." *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001).

The statute does not cover office supplies, books and videos that are purchased to provide basic education to an attorney, parking, courier fees, of LexisNexis fees. *Cf. Hernandez v. Aleman Constr., Inc.*, No. 3:10-cv-2229-BN, 2013 WL 5873289, at *6 (N.D. Tex. Nov. 1, 2013) (not allowing costs for mileage, parking, teleconference fees, postage, private process servers, mediation fees, and office supplies). As far as the excessive production fees, Clinton's affidavit asserts all of the costs were reasonable and necessarily incurred, and he attaches invoices the substantiate the costs. Dkt. 54, Exs. 1–2. Thatcher thus met his initial burden. OakBend conclusorily asserts the production costs are excessive without identifying why it believes they are excessive. Since the statute allows costs for copies necessarily obtained in the case, Thatcher provides some evidence the copy costs for production were necessary, and OakBend does not enunciate an appropriate objection as to why these costs should not be allowed, the court will allow the production costs requested. The court will therefore deduct $1,019.92, which is the sum of $432.39 (office supplies), $290.03 (books/videos), $143.00 (parking), $29.50 (courier fees), and $125.00 (LexisNexis), from the $5,690.38 in costs Thatcher requests.

### Total Costs

$5,690.38 - $1,019.92 = $4,670.46

**C.     Fees Incurred After the Verdict**

Thatcher is seeking compensation for 47.87 total hours of legal work performed by Clinton from February 11, 2016 to the present at $325.00 an hour, and 1.53 hours of clerical or staff work during the same time period billed at $50.00 per hour. Dkt. 67-1. Clinton's post-verdict hours

include time to prepare Thatcher's response to OakBend's motion for judgment as a matter of law, confer with opposing counsel, co-counsel, and Thatcher, prepare the motion and supplemental motion for fees, and prepare a reply to the original motion for fees and costs. *Id.* Clinton asserts that the time was necessary and reasonable. *Id.* & Ex. 2.

OakBend did not file a response to Thatcher's supplemental motion for attorneys' fees. Under Southern District of Texas Local Rule 7.4, "[f]ailure to respond will be taken as a representation of no opposition." S.D. Tex. L.R. 7.4. The court therefore deems the motion unopposed. Thatcher's supplemental motion for attorneys' fees is GRANTED, and Thatcher may recover **$15,634.25** in post-verdict attorneys' fees.

**D.     Costs Incurred After the Verdict**

Thatcher seeks to recover $1,455.60 in post-verdict costs, noting that he is seeking "various costs and non-taxable expenses from February 11, 2016, to present." Dkt. 67-1. He asserts that the "costs and non-taxable expenses incurred were reasonable, necessary and customary under the circumstances." *Id.* It appears that the invoices submitted are for the trial transcript ($1,438.10), which was necessary for preparing the response to OakBend's motion for judgment, and courier fees ($42.05). As noted above, courier fees are not an allowable cost. Clinton has provided no authority for awarding costs that are not specifically allowed under 28 U.S.C. § 1920. Accordingly, the court will not award $42.05 of the $1,455.60 in requested costs.[5] The request for costs in the supplemental motion is GRANTED IN PART AND DENIED IN PART. After deducting this amount, the

---

[5] Clinton requests $1,455.60 in costs and submits invoices for $42.05 and $1438.10. *See* Dkt. 167, Exs. 1–2. The sum of the two submitted invoices exceeds the amount requested. The court assumes that Clinton discounted the cost of the transcript to ensure the costs requested were reasonable.

allowable post-verdict costs are **$1,413.55**, which is $1,455.60 minus the $42.05 that the court will not award.

E.     **Conditional Appellate Fees**

Thatcher seeks an additional $90,000 in conditional appellate attorneys' fees should OakBend pursue an unsuccessful appeal of this case. Dkt. 54-1. He seeks $30,000 in the event of an unsuccessful appeal to the Fifth Circuit, $25,000 more in the event of a petition for writ of certiorari to the U.S. Supreme Court, and $35,000 more if the U.S. Supreme Court grants a write of certiorari. *Id.* OakBend did not respond to this portion of Thatcher's motion for attorneys's fees and costs. Under Local Rule 7.4, the court deems the request unopposed. Thatcher's request for conditional attorneys' fees is thus APPROVED.

### IV. CONCLUSION

Thatcher's original motion for fees and costs (Dkt. 54) and the supplemental motion for fees and costs (Dkt. 67) should be GRANTED IN PART AND DENIED IN PART. The court hereby AWARDS the following attorneys' fees and costs to Thatcher:

> (1) $124,464.13 in attorneys' fees through trial;
> (2) $15,634.25 in post-verdict attorneys' fees;
> (3) 4,670.46 in costs through trial; and
> (4) $1,413.55 in costs post-trial.

The court additionally AWARDS the following conditional attorneys' fees:

> (1) $30,000 in the event of an unsuccessful appeal to the Fifth Circuit;
> (2) $25,000 more in the event of a petition for writ of certiorari to the U.S. Supreme Court; and
> (3) $35,000 more if the U.S. Supreme Court grants a write of certiorari.

Signed at Houston, Texas on October 6, 2016.

_____
Gray H. Miller
United States District Judge